UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**NORTHERN DIVISION at COVINGTON**

| | | |
|---|---|---|
| KEVIN ILES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Case No. |
| | ) | 2:12-cv-187-JMH |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION & ORDER** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

This matter is before the court upon cross-motions for summary judgment on Plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits. [Tr. 27—40].[1]  The court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion [D.E. 11] and grant Defendant's motion [D.E. 12].

**I.   OVERVIEW OF THE PROCESS AND THE INSTANT MATTER**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

1.  An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1] These are not traditional Rule 56 motions for summary judgment.  Rather, it is a procedural device by which the parties bring the administrative record before the Court.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ considered Plaintiff's claim in accordance with the five-step sequential evaluation process. [Tr. 27—40]. He first determined that

2

Plaintiff did not engage in substantial gainful activity during the majority of his alleged disability period under step one, but held that he did engage in such activity between January 1, 2007, and October 1, 2007. [Tr. 29]. Despite this finding, however, the ALJ continued to step two and found that Plaintiff has three medically determinable severe impairments, including degenerative disc disease of the lumbar spine, right trigger finger disorder, and depressive disorder. [Tr. 30].

After deciding that Plaintiff's impairments did not equal a listed impairment under step three, the ALJ proceeded to step four and found that Plaintiff has a residual functional capacity ("RFC") to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b). [Tr. 32]. Although the ALJ found that Plaintiff cannot perform his past relevant work with this RFC, he determined with the assistance of a vocational expert that other work exists in significant numbers nationally and across the state that Plaintiff can perform in his condition. [Tr. 19]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 40].

In this appeal, Plaintiff argues that the Commissioner's decision is not supported by substantial evidence of record. Specifically, Plaintiff argues that

3

the ALJ erred by 1) finding that Plaintiff engaged in substantial gainful activity between January 1, 2007, and October 1, 2007; 2) improperly discounting the opinions of Plaintiff's treating physician and physician's assistant ("PA") in favor of state agency examiners and consultants; and 3) improperly discounting Plaintiff's credibility as to his statements regarding the intensity, persistence, and limiting effects of his symptoms.  The court has considered arguments by Plaintiff and the Commissioner, as well as the administrative record, and, for the reasons stated below, affirms the Commissioner's decision.

## II.  STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility.  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, *see Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).  "Substantial evidence" is "more than a scintilla of

4

evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

### III. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is currently fifty years old with an eighth grade education. [Tr. 148]. He has past work experience as an automobile mechanic, construction worker, and parcel post clerk. [Tr. 181]. Plaintiff filed for disability under Title II on November 10, 2008, originally alleging disability beginning on October 2, 2004, but later amending it to January 1, 2007. [Tr. 27]. The claim was denied both initially and upon reconsideration. [Tr. 27]. Plaintiff requested a hearing with the ALJ, which took place on November 30, 2010. [Tr. 27]. The ALJ issued an unfavorable decision denying disability on January 21, 2011. [Tr. 40].

According to Plaintiff, his medical problems began when he was injured at work in 2004 and hurt his back. [Tr. 180]. Although he kept working after his initial injury, he claims that the pain worsened such that, by 2008, he could no longer maintain a job. [Tr. 180]. Plaintiff also complains of arthritis in his right hand, numbness in his right leg and foot, trigger finger in his right hand, and depression. [Tr. 180; 60–61].

Plaintiff had an MRI in December 2008, which revealed that he suffers from degenerative and discogenic diseases. [Tr. 279]. One month prior to Plaintiff's MRI, he went to the emergency room after a motorcycle accident complaining of lower back pain, at which point the emergency room doctor reported that his past medical history was unremarkable, gave him some Percocet and Motrin, and noted that his only back injuries were contusions. [Tr. 287—88].

Plaintiff has also been treated by Stacey Bishop, M.D., and Jim Ravencraft, P.A., for several years, and both wrote letters in his support to the ALJ. [Tr. 413; 416]. Dr. Bishop reports that Plaintiff has decreased range of motion in his back, bilateral muscle atrophy in his quadriceps, pain with a straight leg raise, tenderness in his lumbar sacral spine, and trigger fingers. [Tr. 416]. Mr. Ravencraft simply wrote that Plaintiff has a herniated disc in his lower back, rendering him unable to work. [Tr. 413].

Dr. Snehal Patel, a state agency consultative examiner, examined Plaintiff in 2009. [Tr. 300]. Dr. Patel concluded that Plaintiff demonstrated a moderate degree of limitation in standing, walking and lifting due to his lower back pain, but found no significant limitations in sitting, reaching in front of him or over

6

his head, manipulating fine objects, communicating, hearing, seeing, or traveling without assistance. [Tr. 300]. Further, Plaintiff denied to Dr. Patel that he had any difficulty with strength or grip in his right hand, and Dr. Patel opined that Plaintiff has no significant limitations from his arthritis alone. [Tr. 298—300]. Finally, Dr. Patel noted that Plaintiff's daily activities were not limited, and that Plaintiff was not in need of an assistive device for walking. [Tr. 300].

With regard to Plaintiff's claim that he suffers from depression, Plaintiff was treated for a short time in 2009 at the NorthKey Community Care center where various social workers noted that he exhibited signs of depression. [352—68]. A state agency consultative psychologist, Dr. Nancy Schmidtgoessling, evaluated Plaintiff in 2009 and determined he was mildly impaired in his ability to follow simple instructions, moderately impaired in his ability to follow and maintain attention to multistep repetitive instructions, moderately impaired in his ability to relate to coworkers and supervisors, and moderately impaired in his ability to tolerate the stress and pressure of work activity. [Tr. 348]. Otherwise, she opined that Plaintiff was not impaired from a psychological standpoint. [Tr. 348].

7

Notably, Plaintiff is still able to drive and care for his son on a part-time shared custody basis [Tr. 78], has no problem with personal care [Tr. 221], and is able to handle his finances [Tr. 221], watch television [Tr. 66—67], surf the internet [Tr. 66—67], and visit with family [Tr. 66].

## IV. Analysis

As an initial matter, Plaintiff argues that the ALJ erred by finding that he engaged in substantial gainful activity after his onset date of January 1, 2007. However, even if the ALJ did err in this determination, a fact about which this court declines to make a finding, everyone involved in this case, including Plaintiff himself, agrees that the error would be harmless given the ALJ's choice to continue his analysis past step one. Therefore, the court will proceed to Plaintiff's next two arguments: whether the ALJ erred in disregarding the opinion of Plaintiff's treating physicians and by discounting Plaintiff's credibility.

### I. The ALJ did not err when he assigned less weight to Plaintiff's treating physicians than to state agency consultative examiners and reviewers.

Plaintiff argues that the ALJ did not give appropriate deference to the medical opinion of his treating physician, Dr. Bishop, or his PA, Mr. Ravencroft.

8

This court finds that Plaintiff's first argument is unwarranted.

Under the "treating physician" rule, an ALJ is usually required to give controlling weight to a treating physician's opinion when deciding whether an individual is disabled. 20 C.F.R. § 404.1527(d)(2). However, the ALJ is entitled to assign less weight to a treating physician's opinion if he determines that it is ill-supported by the objective medical evidence or is inconsistent with other substantial evidence in the case record. *Rogers v. Comm'r of Soc. Sec'y*, 486 F.3d 234, 242 (6th Cir. 2007). If the ALJ chooses to disregard the treating physician's opinion, then he must give specific reasons for doing so. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996) (a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion . . ..").

In this case, the ALJ concluded that Dr. Bishop's opinion was not supported by objective medical findings nor the case record. [Tr. 36]. He explained that she relied primarily on the December 2008 MRI and Plaintiff's joint stiffness, decreased range of motion, and lower extremity weakness, the latter of which are rather subjective. [Tr. 36]. He also explained that Dr. Bishop's diagnoses

generally seemed to uncritically rely on Plaintiff's subjective complaints of pain, and no significant tests, other than the MRI, were ever performed to confirm their veracity. [Tr. 36]. He noted that Dr. Bishop basically limited Plaintiff to a bedridden position with her opinion, which he opined was "clearly not the case." [Tr. 36]. By providing these specific reasons, which are supported by substantial evidence, the ALJ utilized the appropriate framework for his analysis and did not err by assigning little weight to Dr. Bishop's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390—91 (6th Cir. 2004).

Plaintiff argues that Dr. Bishop relied on more than just the above listed symptoms and tests. Specifically, Plaintiff argues that Dr. Bishop also relied on Plaintiff's pain and difficulty moving his lower back upon her examination of him, bilateral muscle atrophy in his quadriceps muscle, bilateral positive pain with straight leg raises, and tenderness to direct palpation of his lumbar sacral spine. [Tr. 11 at 18]. However, the fact that Plaintiff was experiencing pain and tenderness is just as subjective as the factors that the ALJ included in his analysis, and is the very reason that the ALJ declined to assign those factors significant weight. Further, given

10

that the MRI showed that Plaintiff has degenerative disc disease and bulging discs in his back, the fact that Plaintiff experiences pain during straight leg raises is unsurprising, and adds nothing to Plaintiff's case that the MRI has not already provided. Even if the ALJ had explicitly listed these factors as part of Dr. Bishop's analysis, the court cannot see how it would have changed his analysis.

Plaintiff insists that there is no evidence in the record that contradicts Dr. Bishop's opinion, and, thus, argues that this means that her opinion must be accepted. However, as the ALJ pointed out, the underlying inconsistency in Dr. Bishop's opinion seems to not so much be that she determined that he has degenerative disc disease, lower extremity weakness, or joint stiffness, among other problems. Indeed, the Plaintiff is correct that no one in the record disputes the MRI results or that Plaintiff suffers from decreased range of motion and joint stiffness. Moreover, everyone, including the ALJ, admits that Plaintiff likely experiences some pain from his problems. [Tr. 33].

Instead, the inconsistency primarily stems from Dr. Bishop's ultimate conclusion that Plaintiff's pain is so severe and his ability to tolerate stress so low from his

11

impairments that he is rendered incapable of performing even sedentary, low-stress work. In this regard, the inconsistencies are abundant. For example, in May 2009 and November 2010, Dr. Bishop found that Plaintiff could only sit and/or stand for fifteen minutes at a time and had severe manipulative limitations with his hands. [Tr. 335–39; 416]. However, Dr. Patel examined Plaintiff in 2009 and found that Plaintiff had no significant limitations in sitting down or manipulating objects, and Plaintiff himself admitted to Dr. Patel that he did not have problems with strength and/or grip in his hands. [Tr. 298–300].

Further, although Dr. Bishop opined that depression and anxiety over his pain and unemployment makes Plaintiff incapable of even low stress work [Tr. 336], Dr. Schmidtgoessling, a consultative psychologist, found that Plaintiff was only mildly impaired in his ability to follow simple instructions, moderately impaired in his ability to follow and maintain attention to multistep repetitive instructions, moderately impaired in his ability to relate to coworkers and supervisors, and moderately impaired in his ability to tolerate the stress and pressure of work activity. [Tr. 348]. Otherwise, Dr. Schmidtgoessling determined that Plaintiff was not impaired at all from a psychological standpoint. [Tr. 348]. Dr.

12

Schmidtgoessling's observations were in line with those of the social workers at NorthKey Community Care from whom Plaintiff sought treatment for his depression and anxiety. Specifically, those who treated him at NorthKey reported that he was cooperative, attentive, focused, had an average range of intellect, was capable of understanding the consequences of his behavior, and had an intact memory. [Tr. 352]. Given these inconsistencies, the ALJ's decision to assign less weight to Dr. Bishop's opinion was supported by substantial evidence.

Although Plaintiff acknowledges that Mr. Ravencroft, P.A., is not an accepted medical source under 20 C.F.R. § 404.1513(a), he argues that the ALJ was still not free to disregard Mr. Ravencraft's opinion, as non-medical opinions can also be considered by the ALJ under the regulations. However, when dealing with the opinion of a non-medical source, an ALJ "has the discretion to determine the appropriate weight to accord . . . [the] opinion based on all evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997). In this instance, the ALJ exercised this discretion to assign little weight to the PA's opinion because he failed to give a function-by-function analysis as required by Soc. Sec. Rul. 96-2p, 1996 WL 374188 (1996), and stated only that Plaintiff is

13

"unable to work." [Tr. 413]. Thus, contrary to Plaintiff's argument, the ALJ did not immediately reject the PA's opinion simply because he was a PA, but rather gave specific reasons for doing so that were completely independent from his medical degree. Thus, the ALJ appropriately used his discretion to assign little weight to Mr. Ravencroft's opinion.

## II. The ALJ did not err by discounting Plaintiff's credibility.

Next, Plaintiff argues that the ALJ erred by finding Plaintiff's credibility questionable with regard to his statements concerning the intensity, persistence and limiting effects of his symptoms. While an ALJ must consider a plaintiff's statements about his pain when determining whether he is disabled, a claimant's testimony regarding the intensity and persistence of his symptoms "may be discounted if it is contradicted by the medical reports and other evidence." *Sims v. Comm'r of Soc. Sec.*, 406 Fed. App'x 977, 981 (6th Cir. Jan. 19, 2011) (unpublished) (citing *Warner*, 375 F.3d at 392). Further, an "ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his]

subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

In this case, the ALJ's reasons for discounting Plaintiff's credibility were supported by substantial evidence in the record; therefore, deference to his decision is appropriate. First, the ALJ clearly explained that he partially discounted Plaintiff's credibility because the extreme functional limitations alleged by Plaintiff are inconsistent with the diagnostic and clinical evidence in the record, as permitted by 20 C.F.R. § 404.1529(c)(2). [Tr. 33]. For example, although Plaintiff claims that he has been disabled since January 1, 2007, (and originally claimed that he had been disabled since October, 2004), he was released from the hospital after a motorcycle accident in 2008 with a contusion as his only back injury. [Tr. 287—88]. As the ALJ noted, the fact that Plaintiff was feeling well enough to ride a motorcycle during his alleged period of disability, in addition to the fact that the emergency room physician noted that Plaintiff did not have any significant medical history nor more injury to his back at this point than a contusion, casts doubt on his claim that he is so disabled that he is practically bedridden.

Moreover, while Plaintiff essentially testified that he cannot do anything but lie in bed or in his recliner, Dr. Patel's examination revealed that Plaintiff should not have significant limitations in sitting, reaching in front of him, reaching above his head or manipulating fine objects, and should be able to get around without using any form of ambulatory assistance. [Tr. 300]. These contradictions between the objective evidence and Plaintiff's testimony support the ALJ's opinion to discount his credibility.

The ALJ also pointed out the sparse nature of Plaintiff's treatment history. This consideration is acceptable, since, "[i]n the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment" and the "failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec. Admin.*, 88 Fed. App'x 841, 846 (6th Cir. Feb. 3, 2004) (unpublished).

Plaintiff argues that this consideration was error since Plaintiff is without health insurance and claims he could only afford to see doctors sporadically. However, because the ALJ based his negative credibility finding on a variety of factors, he did not err in considering

16

Plaintiff's failure to seek treatment in his credibility determination regardless of Plaintiff's financial situation. *See Davis v. Astrue*, No. 08-122-GFVT, 2009 WL 2901216, at *1 (E.D. Ky. Sept. 3, 2009) (the "ALJ's failure to consider Davis's ability to afford medical treatment was a harmless error because the ALJ based Davis's credibility on various factors, not just on Davis's lack of frequent medical treatment."). Further, while Plaintiff claims he cannot afford to pay the twenty to thirty dollar payment at his doctor's office to maintain more regular visits, he readily admits to smoking cigarettes, and previously admitted to physicians that, early on during his alleged period of disability, he supported a daily marijuana habit. [Tr. 67; 343; 353]. The ALJ appropriately considered his ability to afford such things in light of his statement that he cannot afford medical care. *See Anglian v. Astrue*, No. Civ.A 10-117-GWU, 2011 WL 147571, at *5 (E.D. Ky. Jan. 18, 2011) (citing *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988)) ("the cost of cigarette smoking can be considered when a claimant asserts an inability to afford appropriate medical care.").

Finally, the ALJ also explained that he discounted Plaintiff's credibility to the extent that his involvement in daily activities is inconsistent with his complaints of

17

pain. *See Walters*, 127 F.3d at 532 (citing *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990)); *See also Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 (6th Cir. 1986) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.")). For example, while Plaintiff claims on one hand that he has such pain that he cannot engage in any type of work whatsoever, he also admits to driving and taking care of his child in accordance with his shared custody agreement. [Tr. 221; 78]. Given Plaintiff's emergency room visit for a motorcycle accident, he also obviously rode a motorcycle within his alleged period of disability. [Tr. 287—88]. Further, although Plaintiff alleges that he has difficulty concentrating, he admits to playing on the computer and watching television for up to six hours a day. [Tr. 66—67].

It is important to note that the role of this court is not to determine if the ALJ could have decided in Plaintiff's favor, but, rather, the issue is whether substantial evidence supported his decision. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). With this in mind, the ALJ gave several good reasons for discounting Plaintiff's credibility, and this court will not disturb

18

his decision.   Therefore, because substantial evidence supports the ALJ's decision that Plaintiff is disabled within the meaning of the Social Security Act, Plaintiff's Motion for Summary Judgment must be denied.

**V. CONCLUSION**

In accordance with the above opinion, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [DE 11] is **DENIED**; and

(2) that Defendant's Motion for Summary Judgment [DE 12] is **GRANTED**.

This the 26th day of March, 2013.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge

19